CHARLES R. BREWSTER *vs.* HENRY WILLIAMS.

Action on a promissory note for $500, dated Charleston, 17th January, 1865, and payable in specie or its equivalent "six months after peace is declared between the United States and the Confederate States of America," with interest "from the day that peace, as aforesaid, is declared." The Circuit Judge instructed the jury that the intent of the parties was that the money should be paid six months after peace declared between the two belligerents, each acting as a separate and subsisting power, and as that period had not arrived, no cause of action had accrued: *Held*, That in this there was error.

A note given for the price of slaves purchased in January, 1865, is valid—*semble*.

BEFORE CARPENTER, J., AT CHARLESTON, MARCH TERM, 1870.

Action on a promissory note for $500, dated 17th January, 1865. The declaration contained special counts upon the consideration, alleging that the plaintiff sold to the defendant two slaves on the day of the date of the note, at the price and on the terms stated therein. The note is as follows:

"$500.                    "CHARLESTON, 17th January, 1865.

"Six months after peace is declared between the United States and the Confederate States of America, I promise to pay to C. R. Brewster, or his order, Five Hundred Dollars in specie or its equivalent, with interest on the same from the day that peace, as aforesaid, is declared, for value received.

"H. WILLIAMS."

"Witness,
     "P. W. ALEXANDER."

The presiding Judge instructed the jury that the construction of the instrument belonged to the Court; that the Court construed the paper to mean that the money was to be paid six months after peace between the United States and the Confederate States of America should be declared by those belligerents, each acting in such declaration, and as a separate and subsisting power ; that this period had not arrived, and so no cause of action had accrued to the plaintiff.

The plaintiff excepted to the instructions, and a verdict having been rendered for the defendant and judgment entered thereon,. he appealed to this Court.

*Spratt*, for appellant, contended that the instructions were erroneous; that the true construction of the contract was that the money should be paid six months after the close of the war.

*Lord*, contra, submitted that the terms of the note were plain and unambiguous, and that the meaning and intent was as stated in the instructions. That if they were ambiguous, then, construing them with reference to the consideration, and in the light of the surrounding circumstances, any other construction than that adopted by the Circuit · Judge would be unreasonable. The consideration was slaves sold in January, 1865, and the parties knew that with the fall of the Confederacy slaves would cease to be property. Is it reasonable to suppose that one would purchase slaves at that time and agree to pay for them in specie unless the Confederate States should succeed in their effort to establish an independent government?

July 6, 1871. The opinion of the Court was delivered by

WRIGHT, A. J. The defendant, on the 17th of January, 1865, for a valuable consideration, made a note to plaintiff or order, for the sum of five hundred dollars, which amount he agreed to pay in specie, or its equivalent, six months after peace was declared between the United States and the Confederate States of America.

On the said note plaintiff brought action to recover the amount and interest from date; and, to maintain such action, the note referred to was put in evidence. His Honor the presiding Judge instructed the jury: "That the construction of the said written instrument belonged to the Court, and that the Court construed the paper to mean that the money was to be paid six months after peace between the United States and the Confederate States of America should be declared by those belligerents; each acting in such declaration, and as a separate and subsisting power; that that period had not arrived, and so no cause of action had accrued to the plaintiff."

Those whose business it is to administer the law, as to the true construction and meaning of a statute, should always consider the time in which it was made, the condition of the country at that time, the reasonableness of the statute, and, as far as possible, the intent of those making the statute. The same rule should be applied to the construction of contracts.

The construction should be: 1st. Reasonable; 2d. Liberal. And in all cases aim to meet the real intent of the parties making them.

In Chitty on Contracts, p. 76, he says: "The object, then, which

Columbia, April, 1871.

is to be aimed at in construing a contract, is to discover and give effect to the intention of the parties—*intentioni debent insurvire.*

This rule is just, reasonable, and should receive the sanction of all Courts of justice. All parties to a contract, at the time of making it, mean something, or, in other words, have some object in view; and the general object is understood by such parties, and it should be the object of all Courts, having jurisdiction of contracts, to enforce them in the sense in which they were made, and thereby give effect to the real intent of the parties. In the case of *Seddon* vs. *Senate*, 13 East, 51, Lord Ellenborough said : "The same sense is to be put upon the words of a contract in an instrument under seal, as would be put upon the same words in an instrument not under seal ; for the same intention must be collected from the same words of a contract in writing, whether with or without seal."

It is to be supposed that all contracts are made in good faith, and parties should be held to what reason and common sense and justice would regard as their evident intent, and words alone should not be permitted to govern and destroy the design and intent, and thereby defeat the ends of justice ; for to encourage such a state of things is only to foster duplicity and encourage dishonesty. In the treatise by Vattel on the Law of Nations, page 284, it is said : "Words are only designed to express the thoughts ; thus the true signification of an expression in common use is the idea which custom has affixed to the expression. It is then a gross quibble to fix a particular sense to words, in order to elude the true sense of the entire expression."

Again, on the same page of the same book, after citing several examples, shewing the duplicity of persons taking advantage of the words to carry out their evil designs, it is said : "All these pitiful subtilities are overthrown by this unerring rule—when we evidently see what is the sense that agrees with the intention of the contracting parties, it is not allowable to wrest their words to a contrary meaning. The intent sufficiently known furnishes the true matter of the convention."

A portion of the States of this Union confederated together in order to set up and maintain a separate and independent government; and the result of such a movement was a powerful and bloody war. All who were engaged on the side of the Confederate States, and those who were loyal to the United States Government, were looking with anxious eyes for the time when peace should exist between the two sections of our common country.

During the time the great struggle was going on, many contracts

were made, the condition of which was to pay after the war had ceased. It certainly was a very reasonable way of making them during such a state of affairs, as many of the contracting parties were liable, at any hour, to be called upon to leave their homes and go upon the field of battle; so the better and safer way was, for all parties making contracts, to make them payable after the clash of arms had ceased, and peace existed and was recognized between those States known as the "Confederate States of America," and the Government of the United States.

The Confederate States not being a government *de jure,* neither being recognized by any government on earth, it is not possible that the promisor or promisee of the note in question contemplated in any event to have any such construction given to it as was placed upon it by the Court below.

As to the question raised by counsel concerning the consideration of the note, this Court has already passed upon it.

It is ordered and adjudged that the judgment below be reversed and a new trial ordered.

*Moses,* C. J., and *Willard,* A. J., concurred.